IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REMA M. S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 20-cv-00427-TCK-SH |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Pursuant to 42 U.S.C. § 405(g), Plaintiff Rema M. S. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

I. **Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education,

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps, assuming the impairment is not conclusively presumed to be disabling. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits on May 18, 2018, with a protective filing date of May 7, 2018. (R. 14, 195-205.) In her applications, Plaintiff alleged she has been unable to work since June 1, 2017[2] due to conditions including spinal stenosis, "osteostinosis," sciatica nerve in her left hip, treatment for post-traumatic stress syndrome, depression, pain and loss of flexibility in her right knee, and sleep apnea. (R. 14, 195, 222.) Plaintiff was 51 years old at the time of the ALJ's decision. (R. 26-27.) Plaintiff has at least a high school education and past relevant work as a tumbler operator. (R. 42-43, 223.)

Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 113-120, 125-138.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on November 14, 2019. (R. 33-62, 139-140.) The ALJ issued a decision on November 27, 2019, denying benefits and finding Plaintiff not disabled.

---

[2] In Plaintiff's application for Supplemental Security Income, dated May 18, 2018, it appears she incorrectly listed her disability onset date as the date of application, rather than June 1, 2017. (R. 197.) Because she indicated her onset date was June 1, 2017 in her Title II application (R. 195), and because the ALJ treated June 1, 2017 as Plaintiff's onset date (R. 14), the Court will accept this earlier date as the alleged onset of Plaintiff's disability.

3

(R. 11-27.) The Appeals Council denied review on June 22, 2020 (R. 2-6), rendering the Commissioner's decision final, 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this appeal within 65 days of that order. (ECF No. 2.) *See* 20 C.F.R. § 422.210(c).

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through March 31, 2019. (R. 16.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2017.[3] (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) degenerative disc disease of the thoracic spine; (3) osteoarthritis of the right knee; and (4) obesity. (R. 17-18.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 18-19.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded Plaintiff had the RFC to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with the following additional limitations:

> The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of six hours out of an eight-hour day. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes or scaffolds. The claimant can occasionally balance, kneel, stoop, crouch and crawl.[4]

---

[3] The ALJ acknowledged that Plaintiff worked after the alleged disability onset date but found Plaintiff's three weeks at McDonald's constituted an unsuccessful work attempt. (R. 16.)

[4] Numerous times in Plaintiff's brief, she argues the ALJ failed to include non-exertional limitations in the RFC. (*See, e.g.* ECF No. 14 at 6-8.) As is apparent from the RFC—which includes limitations regarding her ability to climb, kneel, stoop, crouch, and crawl—this is incorrect. *See* 20 C.F.R §§ 404.1569a(c), 416.969a(c).

(R. 19.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 19-25.) At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a tumbler operator. (R. 25-26.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work existing in significant numbers in the national economy, such as small product assembler, electrical accessories assembler, and inspector/packer. (R. 26.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 27.)

### IV.  Issues

Plaintiff raises two allegations of error in her challenge to the denial of benefits: (1) the ALJ improperly came to Plaintiff's RFC, thereby rendering his step-five analysis flawed; and (2) the ALJ failed to properly assess the consistency of Plaintiff's complaints. (ECF No. 14 at 3.) As these assertions play out in Plaintiff's briefing, however, they distill into three lines of argument: (A) the ALJ failed to account for Plaintiff's physical impairments, particularly those purportedly attributable to her pain symptoms; (B) the ALJ failed to include limitations relating to Plaintiff's non-severe mental impairments; and (C) the ALJ improperly rejected the medical opinion of Dr. Bryant. The undersigned reviews the arguments in this order, finds them unavailing, and recommends affirmance of the ALJ's opinion.

### V.  Analysis

**A.  The ALJ Adequately Accounted for Plaintiff's Physical Limitations and Properly Analyzed Plaintiff's Pain.**

Much of Plaintiff's argument on appeal centers around the ALJ's alleged failure to properly account for her physical impairments and symptoms. (*Id.* at 3-8, 13-15.) Plaintiff contends the ALJ failed to evaluate a number of specific impairments—some of which the ALJ found to be severe, medically determinable impairments, and some he did not—while

5

also maintaining he failed to properly analyze the intensity, persistence, and limiting effects of Plaintiff's symptoms. This, Plaintiff argues, rendered the ALJ's step-five analysis flawed. (*Id.* at 3.) The Court finds these arguments unpersuasive.

> **1.    The ALJ Adequately Considered Plaintiff's Back and Knee Pain as a Part of His Review of the Intensity, Persistence, and Limiting Effects of Plaintiff's Symptoms.**

First, Plaintiff contends the ALJ's opinion is flawed because it fails to "properly evaluate, consider, and account for the fact that [Plaintiff] suffers degenerative disc disease of the lumbar and thoracic spine" and that "the whole of [her] medical records demonstrate right knee pain . . . ." (*Id.* at 4-5.) Though Plaintiff separates them into different arguments, these allegations of error fit squarely within her contention that the ALJ conducted an inadequate analysis of the intensity, persistence, and limiting effects of Plaintiff's pain under 20 C.F.R. §§ 404.1529 and 416.929. As such, they will be considered together.

It is well established that, although the ALJ is not required to discuss each and every item of evidence, the record must show he *considered* all evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ is precluded from "ignor[ing] evidence that does not support his decision, especially when that evidence is 'significantly probative.'" *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton*, 79 F.3d at 1009-10). The ALJ also may not pick and choose through uncontradicted medical evidence. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ must consider all limitations established through the record, including those resulting from Plaintiff's symptoms.

When evaluating a claimant's symptoms—such as pain—the ALJ uses a two-step

6

process.[5] *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also generally* 20 C.F.R. §§ 404.1529, 416.929 (regulations governing the evaluation of symptoms). First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the symptoms alleged. SSR 16-3p, at *3. Second, once such impairment(s) are established, the ALJ must evaluate the intensity and persistence of the symptoms, so he can determine how they limit the claimant's capacity to work. *Id*. at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id*. at *7-8. The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-

---

[5] Tenth Circuit precedent has characterized this as a three-step process: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all the objective and subjective evidence, the claimant's pain was, in fact, disabling. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The analysis under SSR 16-3p comports with this process. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). The policy also no longer uses the term "credibility" to describe this analysis. SSR 16-3p, at *2.

by-factor recitation of the evidence" is not required "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's" symptoms. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).

Here, the ALJ's opinion adequately accounted for Plaintiff's pain and symptoms in accordance with the above. First, the ALJ did not pick and choose from among uncontradicted medical evidence or ignore portions of the record unfavorable to his decision. Rather, after finding both Plaintiff's back and knee impairments severe at step two (R. 17), the ALJ considered them throughout his decision and thoroughly accounted for their potential limiting effects on Plaintiff's residual functional capacity (*see, e.g.* R. 20-24[6]). Second, the ALJ engaged in the proper two-step analysis under 20 C.F.R. §§ 404.1529(b)-(c) and 416.929(b)-(c).

He determined, first, after holding at step two in the sequential evaluation that Plaintiff's reasonably determinable severe impairments included "degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, [and] osteoarthritis of the

---

[6] *See* R. 21, 23-24 (considering, among other things, x-rays from February 2018 showing mild osteoarthritis in Plaintiff's right knee and mild scoliosis and mild degenerative changes in her lumber spine—as well as x-rays from September 2018 showing spondylosis and mild disc space narrowing in her mid-to-lower thoracic spine). The ALJ reviewed this evidence alongside subjective reports from Plaintiff—wherein she indicated she was inhibited due to her pain, but that she could perform a range of activities in a limited nature—and objective observations from physicians of Plaintiff's gait, coordination, intact range of motion, muscle strength and tone, and positive low back pain control when engaged in pain management. (R. 20-24.)

right knee" (R. 17), that Plaintiff's impairments "could reasonably be expected to cause [her] alleged symptoms" (R. 20).

Next, the ALJ considered whether Plaintiff's subjective statements regarding her back and knee pain, when evaluated alongside all other objective evidence, led to the conclusion that Plaintiff was disabled. Though he ultimately found that "claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (R. 20-21), he sufficiently considered Plaintiff's subjective reports of pain.

In accordance with 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), the ALJ weighed factors such as Plaintiff's daily activities (R. 20[7]); the location, duration, frequency, and intensity of Plaintiff's back and knee pain (R. 20-24[8]); and the type, dosage, effectiveness, and side effects of Plaintiff's medications (R. 24[9]). Only after this analysis—and consideration of both State Agency physicians' conclusions that Plaintiff could perform a full range of light work (R .25 (citing R. 71, 81, 100, 111))—did the ALJ hold Plaintiff's statements regarding the intensity, persistence, and limiting effects of her back and knee pain were not wholly consistent with the record (*id.*). This is an adequate evaluation of Plaintiff's pain. The mere

---

[7] Noting the adverse effects that Plaintiff reported her pain has on her ability to drive, sleep, clean, shop, and attend church.

[8] Noting the self-reported effects Plaintiff's pain has on her ability to stand and sit (R. 20), Plaintiff's consistent reports of pain to medical providers (R. 21-24), the fact that Plaintiff's pain was well-controlled on pain management in 2019 (R. 24), and the fact that her pain did not consistently affect her gait, balance, coordination, or heel and toe walking (R. 21-24).

[9] Noting Plaintiff's prescription for Norco, as well as Plaintiff's failure to consistently attend physical therapy and, at times, her rejection of treatment due to a reduction in pain. Here, the ALJ incorrectly states that Plaintiff only attended two physical therapy appointments. (R. 24.) Upon Plaintiff's discharge from Summit Physical Therapy, she had attended four treatment sessions (R. 555) out of a scheduled thirteen (R. 551).

existence of pain does not automatically render a claimant disabled, as the purpose of an RFC is to craft guidelines by which a claimant may continue to seek employment *despite* their limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988). The ALJ's RFC formulation (and, therefore, his step-five analysis) was not flawed as to Plaintiff's back and knee impairments.

### 2. The ALJ Properly Considered Plaintiff's Other Alleged Physical Impairments.

Plaintiff also claims the ALJ failed to properly evaluate and incorporate into the RFC her obesity and bilateral wrist pain. (ECF No. 14 at 5-7.) As the ALJ discussed and evaluated both these physical impairments, the undersigned finds no error.

First, regarding Plaintiff's alleged bilateral wrist pain: the ALJ found Plaintiff's wrist pain non-severe at step two (R. 17) and further considered it at step four (R. 21-24 (documenting that though Plaintiff noted pain in her wrists, medical reports showed no reduction in grip strength and Plaintiff herself reported no limitation in the use of her hands)).[10] Further evaluation was unnecessary. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (holding that an ALJ may not rely on a finding of non-severity at step two as a substitute for an RFC analysis regarding a particular impairment, but must, as the ALJ did here, include that non-severe impairment in the step-four analysis).

Second, Plaintiff implies the ALJ failed to properly evaluate her obesity, an impairment the ALJ found severe at step two (R. 17). (*See* ECF No. 14 at 5-6.) Pursuant to SSR 19-2p, 2019 WL 2374244 (May 20, 2019), an ALJ is to analyze obesity at step four much like any other impairment. The ALJ "must consider the limiting effects of obesity when assessing a

---

[10] *See also* R. 241 and 259 (Plaintiff's Function Reports).

person's RFC" and must formulate the "RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at *4.

Here, even if the word "obesity" was not frequently used, the ALJ discussed possible ramifications of Plaintiff's obesity when he addressed the pain-producing impairments stemming from Plaintiff's joints and lower extremities—including her back pain, knee pain, and hip pain—as well as when he discussed Plaintiff's cardiovascular and respiratory health. (*See generally* R. 20-24.) Plaintiff does not reference medical evidence that demonstrates any other areas impacted by her obesity.[11] Further, it is clear the ALJ accounted for Plaintiff's obesity in the RFC, considering he found she could not perform a full range of light work, as proposed by the State Agency physicians, in large part because of "the level of the claimant's obesity . . . ." (R. 25.) As such, the Court finds no error in the ALJ's analysis of Plaintiff's obesity.

### B. The ALJ Properly Accounted for Plaintiff's Mental Limitations in Coming to Her RFC.

Additionally, Plaintiff alleges the ALJ "failed to properly consider and account for the limitations caused by [her] mood disorder and PTSD." (ECF No. 14 at 8.) After a review of the ALJ's analysis, the undersigned concludes this is not the case.[12]

---

[11] Plaintiff makes general reference to the proposition that "[o]besity can adversely affect an individual's mental health" and complains that the ALJ failed to consider Plaintiff's obesity in conjunction with her mood disorder. (ECF No. 14 at 6.) Plaintiff, however, fails to offer in what way her obesity might affect her mood disorder, and, as explained *infra*, the ALJ properly evaluated Plaintiff's mental health related impairments.

[12] Plaintiff's primary argument appears to be that her mental impairments, while not severe, should still have resulted in some sort of mental restriction in the RFC. (ECF No. 14 at 8.) However, at times, Plaintiff also appears to dispute the ALJ's findings as to the severity of her impairments. (*See, e.g., id.* at 10-11.) The undersigned has, therefore, examined the ALJ's analysis at both step 2 and in formulating the RFC, and finds no error at either stage.

Generally, the sequential steps outlined in 20 C.F.R. §§ 404.1520 and 416.920 apply to the evaluation of mental impairments. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). However, "[w]hen there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must [also] follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (quoting *Cruse v. U.S. Dep't of Health & Hum. Servs.*, 49 F.3d 614, 617 (10th Cir. 1995)) (some alterations in original). Deemed the "Psychiatric Review Technique," this evaluation is a three-step process.

First, the ALJ evaluates the claimant's pertinent symptoms, signs, and laboratory findings to determine whether the claimant has "a medically determinable mental impairment(s)." *See* 20 C.F.R. §§ 404.1520a(b), 416.920a(b). Second, the ALJ rates the degree of claimant's functional limitation in four broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c), 416.920a(c).[13] Lastly, the ALJ uses this information to determine the severity of the claimant's mental impairments. *Id.* §§ 404.1520a(d), 416.920a(d). If the degree of severity is determined to be none or mild, the ALJ will generally conclude the mental impairment is not severe. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). However, if the ALJ concludes the claimant has a severe mental impairment—and finds it does not meet or equal a Listing—the ALJ must then assess

---

[13] Under the regulation, the degree of limitation in these four broad areas of functioning is evaluated using a five-point scale: from (1) none to (2) mild, (3) moderate, (4) marked, and, finally, (5) extreme. *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

the mental impairment under the step-four RFC analysis.[14]  *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

Plaintiff argues the ALJ was required to include in the RFC mental restrictions, simply because the ALJ found a mild impairment at step two. (ECF No. 14 at 8.) This is incorrect. The ALJ sufficiently walked through the required steps of the Psychiatric Review Technique and weighed the evidence to come to an acceptable conclusion regarding Plaintiff's mental impairments at step two. Then, before step four, the ALJ again reviewed Plaintiff's mental impairments in determining her residual functional capacity. This is all that was required.

At step two, the ALJ evaluated Plaintiff's symptoms, signs, and the relevant laboratory findings and determined Plaintiff's medically determinable impairments included her mood disorder and posttraumatic stress disorder ("PTSD"). (R. 17.) The ALJ then rated the degree of Plaintiff's functional limitations resulting from these impairments as mild in all four broad areas of functioning. (*Id.*) As such, the ALJ found Plaintiff's mood disorder and PTSD to be non-severe impairments in accordance with 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). (*Id.*) The ALJ reached this conclusion only after walking through how Plaintiff's medically determinable mental impairments limited her ability to function—considering Plaintiff's self-reported limitations in her *Function Report – Adult* from both June 2018 and December 2018. (R. 17-18.)

The ALJ continued his consideration of Plaintiff's non-severe mental impairments in crafting the RFC, reviewing Plaintiff's own testimony about her mental condition (R. 20) and assessing the symptoms she reported to Dr. William Bryant (R. 22). In his analysis of

---

[14] Even if an impairment is not severe, the ALJ will consider it in determining a claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(2), (e); § 416.945(a)(2), (e).

13

Plaintiff's RFC, the ALJ reasoned that, in spite of her PTSD and grief, given Plaintiff's lack of counseling or inpatient treatment, her IQ as estimated by Dr. Bryant, Dr. Bryant's conclusion that she could manage her own benefits, and the Oklahoma Disability Division physicians' opinion that claimant had no severe mental health impairments, it was not necessary to include mental limitations in Plaintiff's RFC.[15] (R. 24-25.) The Court finds no reversible error in the ALJ's evaluation of Plaintiff's mental impairments.

### C. The ALJ Properly Considered the Medical Evidence.

Lastly, Plaintiff maintains the ALJ failed to review dispositive medical evidence—particularly the purported limitations described by Dr. Bryant—and failed to assign Dr. Bryant's medical opinion any weight. (ECF No. 14 at 11-13.) Two issues plague Plaintiff's arguments. One, for claims filed on or after March 27, 2017, the ALJ no longer defers to medical opinions or assigns opinions specific evidentiary weight. *See* 20 C.F.R. §§

---

[15] Plaintiff faults the ALJ for referencing her lack of treatment, arguing she could not afford the inpatient treatment at Grand Lake Mental Health in 2015 and that the record demonstrates she took medications for depression and anxiety. (ECF No. 14 at 11.) However, this was not the sole basis of the ALJ's reasoning—the ALJ also considered the opinions of the State agency physicians and the lack of any finding by a medical professional that Plaintiff suffered from a mental health functional limitation. (R. 25.) The ALJ's determination that Plaintiff's mental health impairments were non-severe, and mild in all areas of mental functioning, is consistent with the opinions of the Dr. William Farrell and Dr. Laura Eckert and properly considered, as discussed above. (*See* R. 67, 77, 96, 107.) Plaintiff does not challenge on appeal the ALJ's evaluation of the Dr. Farrell or Dr. Eckert's opinions. (*See generally* ECF No. 14.) Second, the records from Grand Lake Mental Health that Plaintiff points to as evincing her severe depression are from 2015, two years before the alleged onset of Plaintiff's disability. (*Id.* at 11.) More recent medical records show milder depression symptoms after 2015. (R. 411, 451, 478-479, 499.) Though the ALJ's decision lacked a clear discussion of the exact record notations evincing these milder symptoms, the undersigned is convinced the ALJ was aware of this evidence. (R. 21-25 (citing extensively to exhibits 3F and 4F, which contain these records).) As such, much like the ALJ's treatment of Dr. Bryant's findings, discussed *infra*, the Court finds any error harmless, as is it did not alter the evidence before the ALJ or undermine the Court's confidence in his decision. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

404.1520c(a), 416.920c(a). Two, Dr. Bryant's consultive examination ("CE") contains no such opinion. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

As noted above, for claims filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c govern the consideration of medical opinions and prior administrative medical findings. The ALJ is no longer to give "any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions by considering the following factors: (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict a medical opinion or prior administrative finding. *Id.* §§ 404.1520c(c), 416.920c(c).

However, before it is necessary for the ALJ to complete this analysis, the finding articulated by the medical professional must qualify as a medical opinion. Pursuant to 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2), a medical opinion is "a statement from a medical source about what [plaintiff] can still do despite [plaintiff's] impairment(s) and whether [plaintiff] ha[s] one or more impairment-related limitations or restrictions[16] . . . ." *Id.* Dr.

---

[16] Those impairment-related limitations or restrictions are expressed in the following abilities: (i) plaintiff's ability to perform the physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) plaintiff's ability to perform the mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) plaintiff's ability to perform other demands of work, such as seeing, hearing, or using other

15

Bryant did not offer an opinion about what Plaintiff could still do despite her limitations.[17] (*See generally* R. 517-520.) Instead, Dr. Bryant documented Plaintiff's subjective complaints and symptoms and, without any accompanying analysis, reported the results of knowledge, memory, math, abstracting, generalization, and judgment tests. (*Id.*) At the end of his report, Dr. Bryant makes a number of observations and conclusions, including that "[Claimant] was manifestly anxious during the session," that her "generalizations were very poor," that she had "PTSD and grief . . . [but not] a thought disorder," and that her "physical limitations and description of her pain were credible." (R. 520.) The Court is not convinced these findings fall within the parameters of 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

In an attempt to shoehorn in her subjective reports of pain and limitations, Plaintiff argues that because Dr. Bryant noted "[her] stated limitations about her pain and pace were credible," the ALJ should have "incorporated Dr. Bryant's noted limitations in his RFC . . . ." (ECF No. 14 at 12.) Yet, again, Dr. Bryant did not offer any limitations. (R. 517-520.) Plaintiff essentially asks the Court to accept her subjective reports as a medical opinion because the consultive examiner did not discredit her. That is not the way a Court's analysis of either medical opinions or Plaintiff's subjective statements operate. *See* 20 C.F.R. §§ 404.1521, 416.921 (establishing medically determinable impairments); *see also id.* §§

---

senses; and (iv) plaintiff's ability to adapt to environmental conditions, such as temperature extremes or fumes. 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv), 416.913(a)(2)(i)(A)-(D).

[17] To the extent Dr. Bryant's checkmark-style finding that Plaintiff can manage benefit payments on her own behalf (R. 516)—a capability not framed in terms of her capacity to conduct work-related functions, as 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2) are styled—is a medical opinion, this Court finds the ALJ's failure to engage in a 20 C.F.R. §§ 404.1520c(b), 416.920c(b) analysis of this opinion harmless. It does not alter the evidence before the ALJ and does not undermine this Court's confidence in the decision. *See Allen*, 357 F.3d at 1145. Moreover, though he did not explicitly conduct an analysis under 20 C.F.R. §§ 404.1520c(b) and 416.920c(b), the ALJ clearly considered Dr. Bryant's report. (R. 22, 25.)

404.1520c(b), 416.920c(b) (consideration of medical opinions); *id.* §§ 404.1529(b)-(c), 416.929(b)-(c) (evaluation of symptoms). Plaintiff even recognizes that her argument asks the Court to treat Plaintiff's self-reported limitations as medical opinions, allowing that "Dr. Bryant did not provide specific limitations" and that "Dr. Bryant had not provided concrete limitations regarding [Plaintiff's] PTSD and mood disorder . . . ." (ECF No. 14 at 10, 12.) Therefore, the Court declines to evaluate Dr. Bryant's dictation of Plaintiff's reported symptoms as the opinion of an acceptable medical source. The ALJ properly considered Plaintiff's medical evidence.

**VI.   Conclusion and Recommendation**

The undersigned Magistrate Judge finds that the ALJ applied the correct legal standards and that substantial evidence supports the Commissioner's decision. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by October 22, 2021.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States*

17

*v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 8th day of October, 2021.

                                                                _____
                                                                **SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
                                                                **UNITED STATES DISTRICT COURT**