IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REMA M.S., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. 20-CV-427-TCK-SH |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the Report and Recommendation of United States Magistrate Judge Susan E. Huntsman. Doc. 19. In the Report and Recommendation, Magistrate Judge Huntsman recommended the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f, be affirmed. *Id.*

Plaintiff Rema M.S. has objected to the Report and Recommendation. Doc. 20.

**I. Standard of Review**

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a de novo review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Even if the court would have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1500 (10th Cir. 1992).

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of her alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth the five steps in detail). The claimant bears the burden of proof at steps one through four. *Williams*, 844 F.2d at 751 n. 2. At step one, a determination is made as to whether the claimant is presently engaged in substantial gainful activity. *Id.* at 750. At step two, a determination is made whether the claimant has a medically determinable impairment or combination of impairments that significantly limit her ability to do basic work activities. *Id.* at 751. At step three a determination is made whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Id.* If it is, the claimant is entitled to benefits. *Id.* If it is not, the evaluation proceeds to the fourth step, where the claimant must show that the impairment prevents her from performing work she has performed in the past. *Id.* If the claimant is able to perform her previous work, she is not disabled. *Id.* If she is not able to perform her previous work, then the claimant has met his burden of proof, establishing a prima facie case of disability. The evaluation process then proceeds to the fifth and final step: determining whether the claimant has the residual functional capacity ("RFC")[1] to perform other work in the national economy in view of her age, education, and work experience. *Id.* The Commissioner bears the burden at step five, and the claimant is entitled to benefits unless the Commissioner establishes that the claimant retains the

---

[1] A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite her impairments: the claimant's maximum sustained work capability. *Williams,* 844 F.2d at 751.

capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (citation omitted).

## II. Background

Plaintiff applied for Title II and Title XVI disability benefits on May 18, 2018, with a protective filing date of May 7, 2018. R. 14, 195-205. In her applications, Plaintiff alleged she has been unable to work since June 1, 2017 due to spinal stenosis, "osteostinosis," sciatica nerve in her left hip, treatment for post-traumatic stress syndrome ("PTSD"), depression, pain and loss of flexibility in her right knee, and sleep apnea. R. 14, 195, 222. She was 51 years old at the time of the ALJ's decision. R. 26-27. Plaintiff has at least a high school education and past relevant work as a tumbler operator. R. 42-43, 223.

Plaintiff's claims for benefits were denied initially and upon reconsideration. R. 113-120, 125-138. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted on November 14, 2019. R. 33-62, 139-140. The ALJ issued a decision on November 27, 2019, finding that the Plaintiff was not disabled and denying her claim for benefits. R 11-27. The Appeals Council denied review on June 22, 2020 (R. 2-6), rendering the Commissioner's decision final. 20 C.F.R. §§404.981, 416.1481. Plaintiff timely appealed the order. Doc. 2. 20 C.F.R. §422.210(c).

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through March 31, 2019. R. 16. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2017. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative disc disease of the thoracic spine; osteoarthritis of the right knee; and obesity. R. 17-18. At step three the ALJ found Plaintiff's impairments did not meet or equal a listed

impairment. R. 18-19. At step four, he concluded Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Part 404, Subpart P, Appendix 1.

Based on the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded she had the RFC to perform "light work a defined in 20 CFR 404.1567(b) and 416.967(b)," with the following additional limitations:

> The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of six hours out of an eight-hour day. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes or scaffolds. The claimant can occasionally balance, kneel, stoop, crouch and crawl.

R. 19. In his decision, he recited the evidence supporting his finding. R. 19-25. At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a tumbler operator. R. 25-26. However, based on the testimony of a vocational expert ("VE"), the ALJ found at step five that Plaintiff could perform other work existing in significant numbers in the national economy, including small product assembler, electrical accessories assembler, and inspector/packer. R. 26. As a result, the ALJ concluded Plaintiff was not disabled. R. 27.

**III. Issues**

Plaintiff alleges (1) the ALJ improperly assessed her RFC, thereby rendering her step-five analysis flawed; and (2) the ALJ failed to properly assess the consistency of Plaintiff's complaints. Doc. 14 at 3. However, as the Magistrate noted in her Report and Recommendation, Plaintiff actually identifies three alleged errors. Specifically, Plaintiff contends:

- The ALJ failed to account for Plaintiff's physical impairments, particularly impairments purportedly attributable to her pain symptoms;

- The ALJ failed to include limitations relating to Plaintiff's non-severe mental impairments; and

5

- The ALJ improperly rejected the medical opinion of Dr. Bryant.

**IV. Analysis**

    **A. Assessment of Physical Impairments**

Plaintiff alleges she is disabled due to the following physical disorders: "severe" right knee osteoarthritis, obesity, spinal disorders and nonsevere bilateral wrist disorders. She contends the ALJ's assessment of her RFC was deficient because he failed to evaluate a number of her physical impairments and/or to properly analyze the intensity, persistence and limiting effects of her symptoms. Specifically, she argues the ALJ did not "properly evaluate, consider, and account for the fact that [Plaintiff] suffers degenerative disc disease of the lumbar and thoracic spine" and that her medical records demonstrate right knee pain. . . ." Doc. 20.

When the Social Security Commissioner makes a decision involving a determination of disability which is in whole or in part unfavorable to an applicant, the decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating he Commissioner's determiner and the reason or reasons upon which it is based. 42 U.S.C. §405(b(1).

While the ALJ is not required to discuss each and every item of evidence in his decision, the record must demonstrate that he *considered* all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Nor may the ALJ pick and choose through uncontradicted medical evidence. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

The ALJ held at step two of the sequential evaluation that Plaintiff's reasonably determinable severe impairments included degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, osteoarthritis of the right knee, and obesity. R. 17. Further, he determined that Plaintiff's impairments "could reasonably be expected to cause [her]

alleged symptoms," but he concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record. . . . R. 20-21.

The ALJ next addressed the question of whether Plaintiff's subjective complaints regarding her back and knee pain—when evaluated with objective evidence, supported a conclusion that she was disabled. Specifically, pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), he considered factors such as plaintiff's daily activities, including her statement that her pain has adverse impact on her ability to drive, sleep, clean, shop and attend church. R. 20.

The ALJ then considered Plaintiff's subjective statements regarding her back and knee pain. He noted she had reported she is unable to work due to pain in her hips, knees and lower back, and that she needs to change position approximately every ten minutes. *Id.* He acknowledged her claim that she can lift no more than 10 pounds due to back pain. *Id.* However, he opined that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," her statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence . . ." *Id.*, R. 21.

In reaching this conclusion, the ALJ "weighed factors such as Plaintiff's daily activities; the location, duration, frequency and intensity of Plaintiff's back and knee pain; and the type, dosage, effectiveness and side effects of Plaintiff's medications, and consideration of both State Agency physicians' conclusions that Plaintiff could perform a full range of light work. R. 25 (citing R. 71, 81, 100, 111).

The Court concludes that the ALJ adequately accounted for Plaintiff's physical impairments, including impairments attributable to her pain symptoms.

### B. Alleged Failure to Include Limitations Relating To Plaintiff's Non-Severe Mental Impairments

Plaintiff also contends the ALJ "failed to properly consider and account for the limitations caused by [her] mood disorder and PTSD." Doc. 14 at 8.

In general, the sequential steps set out in 20 C.F.R. §§ 404.1520 and 416.920a(a) govern the evaluation of mental impairments. *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a). But "[w]hen there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must [also] follow the procedure for evaluating mental impairments set forth in 20 C.F.R. §404.1520a and the Listing of Impairments and document the procedure accordingly." *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (internal citation omitted). This evaluation, deemed the "Psychiatric Review Technique," is a three-step process.

At step one, the ALJ evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has any "medically determinable mental impairment(s)." *See* 20 C.F.R. §§404.1520a(b), 416.920a(b). At step two, the ALJ must rate the degree of the claimant's functional limitation in four broad areas: understanding; remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.*, §§ 4004.1520a(c), 416.920a(c).[2] Finally, the ALJ uses this information to determine the severity of the claimant's mental impairments. *Id.*, §§404.1520a(d), 416.920a(d).

If the degree of severity is determined to be none or mild, the ALJ will generally conclude the mental impairment is not severe. *Id*, §§ 401.1520a(d)(1), 416.920a(d)(1). If, however, the ALJ concludes the claimant has a severe mental impairment that does not meet or equal a listing—

---

[2] The degree of limitation in these four areas of functioning is evaluated using a five-point scale: (1) none, (2) mild, (3) moderate, (4) marked, and (5) extreme. *See* 20 C.F.R. §§ 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

the ALJ must assess the mental impairment under the step-four RFC analysis. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(30.

Plaintiff contends the ALJ was required to include mental restrictions in the RFC based on his finding of a mild impairment at step two. However, the ALJ sufficiently walked through the required steps of the Psychiatric Review Technique and weighed the evidence in reaching an acceptable conclusion regarding Plaintiff's mental impairments at step two. Then, before step four, the ALJ again reviewed Plaintiff's mental impairments in determining her residual functional capacity. No more was required.

At step two, the ALJ evaluated Plaintiff's symptoms, signs and the relevant laboratory findings in determining that Plaintiff's medically determinable impairments included her mood disorder and PTSD. R. 17. He then rated the degree of Plaintiff's functional limitations resulting from these impairments as mild in all four broad areas of functioning. *Id.* Specifically, in accordance with 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1), the ALJ found that Plaintiff's mood disorder and PTSD were non-severe impairments. The ALJ reached this conclusion only after examining how Plaintiff's medically determinable mental impairments limited her ability to function, and considering Plaintiff's self-reported limitations in her Function Report-Adults from both June 2018 and December 2018. R. 17-18.

The Court concludes that the ALJ adequately evaluated the Plaintiff's mental impairment in determining her RFC.

### C. Rejection of Dr. Bryant's Medical Opinion

Plaintiff criticizes the ALJ's treatment of the report prepared by consultative psychologist William T. Bryant, Ph.D. Dr. Bryant was retained by the State of Oklahoma Disability Determination Division to perform a mental status exam. Doc. 11-7, Bryant Report. The Report

includes statements Plaintiff made to Dr. Bryant about her physical condition and limitations. *Id.* at pp. 2-3. In her Report and Recommendation, the Magistrate Judge found that because Dr. Bryant did not offer any limitations, the Court is not required to accept Claimant's "subjective reports" as "medical evidence" under 20 CFR §§404.1521 and 416.921. Doc. 19 at 16-17.

As the Magistrate Judge noted, 20 C.F.R. §§ 404.1520c and 416.920c govern the consideration of medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. Specifically, the ALJ is no longer required to provide "any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." *Id*, §§404.1520c(a), 416.920c(a). Instead, the ALJ must evaluate the persuasiveness of all medical opinions by considering (i) the supportability of the opinions; (ii) the consistency of the opinion; (iii) the medical source's specialization; and (iv) any other factors that tend to support or contradict a medical opinion or prior administrative finding. *Id.*, §§ 404.1520c(c), 416.920c(c).

Importantly, though, the medical professional's finding must qualify as a "medical opinion" before it is necessary for the ALJ to complete the analysis. Pursuant to 20 C.F.R. §404.1513(a)(2) and 416.913(1)(2), a "medical opinion" is "a statement from a medical source about what [plaintiff] can still do despite [her] impairment(s) and whether [plaintiff] ha[s] one or more impairment-related limitations or restrictions . . . ."

Dr. Bryant documented Plaintiff's subjective complaints and symptoms. Doc. 11-7. However, he offered no opinion about what she could still do despite her limitations. *Id.* R. 517-520. Accordingly, the doctor's statements cannot be considered under 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2).

## V. Conclusion

For the reasons set forth above, the Court overrules Plaintiff's objection to the Report and Recommendation of Magistrate Judge Huntsman. The Report and Recommendation is hereby adopted, and the Commissioner's decision denying Plaintiff's application for Social Security benefits is affirmed.

ENTERED this 14th day of February, 2022.

*Terence C. Kern*
TERENCE C. KERN
United States District Judge